board house. Johnny on the spot, but I haven't been able to give my opening remarks. If you'll sit down. Four score and seven years ago, just please observe our traffic light system. The yellow light gives you two minutes to wind up when you do red light signals. We appreciate your concluding your remarks. We have read the briefs and record excerpts, but we do appreciate record citations. With that, we call the first case in the morning. Kumar v. Garland, number 20-60712. I take it you're Ms. Matting? Yes, Your Honor. Are you from Houston? I'm not, Your Honor. I'm from D.C. You're Hogan Levels, though, right? Yes. Yeah. All righty. Thank you, Your Honors. May it please the Court and Matting for Petitioner Pardeep Kumar. Pardeep Kumar was repeatedly threatened and beaten at the hands of... Is the thing on? I can hear her, but I don't think the microphone's on. I have a red light, so maybe not. I can aim to be louder. No, I can hear you. The microphone is on. Okay. Sorry. I'm sorry. No, you gave me a little extra time. Thank you, Your Honors. If you were saying... Yes. Pardeep Kumar was repeatedly threatened and beaten at the hands of the ruling BJP party due to support for and work on behalf of the INLD party. The evidence that was before the immigration judge shows that these attacks were severe and systematic and on their own constitute persecution. This court can and should say so. However, since Mr. Kumar's hearing before the immigration judge on November 15th, 2019, his basis for asylum in this case has grown even stronger. Since that time, Mr. Kumar's family and close friends have suffered from repeated attacks and threats by the BJP due to their relationship to him and their knowledge of his location. Additionally, since the hearing, two similarly situated INLD party workers who were denied asylum and removed to India were sought out and mercilessly beaten by the BJP. As a result, we know that... How do we know that? We know that from affidavits submitted with the evidence in the motion. Affidavits from whom? The affidavits are both from the two INLD party workers. This evidence is also discussed in my client's updated declaration.  Yes. Why? Why? Well, if all the INLD moves to the U.S., I mean, there won't be an INLD opposing the current party, pointing it out. Okay. We have submitted that as a result of these facts, Your Honor, the court could also resolve this case by remanding for the consideration of this new evidence. Remand is appropriate here due to a very particular set of circumstances, as the evidence both could not have been obtained prior to the hearing before the immigration judge and is very likely to change the results in this case as it is particularized to Mr. Kumar's claims. If I may, Your Honors, I'd like to start with the second point and discuss remand. The BIA abused its discretion by denying remand as the evidence presented goes directly to Mr. Kumar's prosecution and his well-founded fear of future persecution. No court has yet been able to consider this evidence on the merits. Now, Your Honors, I would like to first address on this topic the 28J letter and the response from my opposing counsel. We submitted a 28J letter last week to this court citing a case Morales-Lopez. Now, Morales-Lopez was a 2021 decision in which this court found that an in the reasoning in this decision, the court noted that threats to a petitioner's family members may be considered as part of the past persecution analysis as long as they are coupled with threats to the petitioner. Now, this is directly relevant to our case given that significant amounts of the evidence, particularly presented with the evidence on remand, goes to the question of whether, you know, these attacks on my client's family members support his claims for past persecution. The government contends that we waived this argument and, Your Honor, that, I believe, is a mischaracterization of the arguments that we did make previously. If the court would like, I would be happy to run through the citations in our argument to demonstrate where those occurred. Please let me know if you would like more of them. JUSTICE GINSBURG-MORALES Let's just get to the legal points you're trying to make. MS. TAYLOR Okay. JUSTICE GINSBURG-MORALES So, therefore— JUSTICE GINSBURG-MORALES We'll check the citation. MS. TAYLOR Okay. So, on this topic. So, on remand, we submitted, I would say, five categories of new evidence. The first category are evidence regarding the attacks on Mr. Kumar's brother. This is Mr. Sandeep Kumar. I'll refer to him as Sandeep for clarity. So, Sandeep was attacked twice by the BJP because of his relationship to Mr. Kumar. In one occasion, he was beaten so badly that he was hospitalized. In both occasions, he was threatened and told to pass on those threats to his brother. Now, these incidents occurred and are directly relevant to Mr. Kumar's claims of past persecution, and very clearly because of the case Morales-Lopez that I just cited. Again, Morales-Lopez states that threats of violence against family members can support a finding of persecution so long as they are coupled with threats made directly to the petitioner. Here, Mr. Kumar's brother was specifically targeted by the BJP due to his relationship with Mr. Kumar, and in fact, these involved threats directly to be passed on to Mr. Kumar. This evidence also goes to my client's well-founded fear of future persecution. In fact, this court previously remanded in just such a situation in Abdel-Messiah. In events that occurred involving his family members after the petitioner had left the country. One of those events involved the detention and beating of his brother, during which the brother was questioned about the locations of the petitioner in question. In that case, the court remanded for the board to consider that evidence, as the board had not done so in the first instance. Similar evidence also is found regarding Mr. Kumar's detention by the BJP. All of these arguments seem to assume that your client was himself persecuted by being beaten, right? Yes, Your Honor. But the BIA didn't find that entirely persuasive, did they? Well, I would say, Your Honor, these arguments do not necessarily presume that, because frankly, these arguments go to the question of whether the BIA should have considered this evidence on remand and sent the question back to the judge. Well, I mean, if he wasn't . . . you know, threats are hollow, you know, unless he's got a weaker . . . perhaps he has a weaker constitution than the justices of the United States. But his argument is that they took him aside and they beat him and he had to go to the hospital. But the BIA pointed out he was very inconsistent in what he described as the symptoms or the consequences of the beatings. And, you know, a couple years later he says, oh, yeah, I still can't walk because I was beaten. But, you know, there's . . . doctors can never opine about the cause of that kind of thing. They can only opine about the symptoms that a person demonstrates. So how do you . . . how do you, you know, get around that? Well, if you'd like, I'm happy to turn to the topic of past persecution on the, you know, the merits of the evidence that's before the immigration judge and the BIA, sort of on the central claim. And first is that this Court has stated repeatedly that death threats and beatings ought to be considered cumulatively. This was very clearly stated in Venturini v. McCossie. And we would contend that when you look at the evidence here cumulatively, it does rise to the level of persecution. And while no individual attack may, this whole body of evidence does. And so your Honor is correct. There are two beatings that my client suffered, first in July 2018 and then in October 2018. Both of these beatings involved threats to the petitioner and threats on his life. Then, as soon as possible after the October 2018 beating, my client fled, demonstrating his legitimate fear that this would occur again. Finally, following his flight, the BJP continued to target his family and threatened his life. Twice, they went to Mr. Kumar's mother and uncle's homes to look for him. And when the family did not tell his evidence, tell the BJP their, his location, they destroyed their possessions and threatened to kill Mr. Kumar. Is that, quote, past persecution? Yes, Your Honors. I would say Morales-Lopez directly indicates that that is past persecution. Under, okay. Yes. These are threats made to the petitioner's family that were actually directly, not even threats on the petitioner, in this case, his life. Important that it's... Past in terms of what? Past before the hearing? Past before he left India? What is past? In this case, this would be... I thought that was after he left. Yes. This evidence did involve threats after he left, but they were threats directly made on his person. So these are events that occurred, threatening his life, and that go to the cumulative analysis that is at issue here. They also do, I will submit, Your Honor, go to his well-founded fear of future analysis, and that very clearly is sort of an obvious indication of well-founded fear in the future when your family is being threatened. An important note, Your Honors, is that neither the immigration judge nor the BIA ever discussed this last piece of evidence, and that is the evidence directly on the attacks on Mr. Kumar's, or the threats and, you know, vandalization of Mr. Kumar's mother and uncle's homes. This evidence was properly before both the immigration judge and the board. This is not part of the remand evidence. Neither of them ever addressed this. Can I ask you a question about that? Yeah. So section 1252 D1 in the INA says that a court may review a final order of removal only if the alien has exhausted all available remedies, I'm sorry, all administrative remedies available to the alien as of right. And as you know, the alien has available as of right a motion for reconsideration where the board or the IJ overlooks a piece of key evidence. Did your client file a motion for reconsideration in light of your alleged oversight of this evidence? So my client did file a motion for remand. I'm sorry, Your Honor, I'm not entirely sure of the distinction here. My client did file a motion to remand, which was a proper course before the board. Motion for remand is not a thing available as of right. The motion for reconsideration is provided to the alien by both the statute and the regulations promulgated by the Justice Department. And we have precedent that say where you have an argument that you think the board has overlooked, the proper remedy is to go to the board and say, oh, board, you overlooked this thing. Please look at this thing. And so I'm wondering why that, why we're allowed to even hear the arguments that you're presenting today. I guess I believe you're referring to what I understand was a motion to reopen, Your Honor. No, those are actually separate. That's also available, but obviously not presented here. Right. So the motion to reconsider and the motion to reopen are separate things. The motion to reopen is obviously after everything is final. Then you can reopen. So my understanding, Your Honors, is that a motion to remand is proper here. The board does have a standard that it utilizes when it considers motions to remand. And it has considered these and granted them in the past. So I do believe this is a proper course to raise these arguments and consider them here. And it's a course that this Court may review as well under the abuse of discretion standard. I will submit, Your Honors, that it is normally something that is within the board's discretion. And here we just believe the facts do rise to the level where this simply was, was an abuse of that discretion. Counsel, you, you may not be prepared to respond to this, but to pick up a little bit on what Judge Odom was asking you, the issue really is exhaustion. Uh, as, was this issue fully pres, was an issue fully presented to the BIA? And we have this separate and maybe fairly strict division between matters that were created by the decision of the BIA, and you must file a motion for reconsideration to raise these new matters because the decision created them, as opposed to, uh, raising the issue in the initial claim. Once it's resolved, it can be considered by us in a petition for review. So issues of what wasn't considered by the board that was presented to the board, we have to fit that within one of those two categories. Was it created when the BIA made its decision and it did not address it, or is it an issue properly raised in the way it was initially presented? Can you address that at all? Are you familiar with that case law? Um, Your Honors, I'm not particularly familiar with that case law. I would be happy to submit a letter after the fact, um, looking into it. However, I will note that this, uh, this issue has not been raised by the government here. Um, and the question of whether remand was an appropriate, uh, remedy here, again, has, has not been raised by the government. Uh, We're talking about a different, Judge Southwick and I are both asking you a jurisdictional question. So with respect to the government, um, and obviously we take seriously their litigating positions, we always check our jurisdiction first, and our cases are pretty clear on this point. Um, and it derives from 1252d1, a statute passed by Congress. We're not talking about the remand proposition. Well, exhaustion is required, right? Yes. But it doesn't say specifically that a motion to reconsider must be filed, right? It's permissive, isn't it? Thank you, Your Honor. Yes, it is. Um, so in this, in this instance, Your Honors, if, if the motion to reconsider is at issue with regarding certain of our facts, uh, we would submit that it is, it's not at issue with regards to the, the full case. Um, so turning back to the issue of remand here and whether, um, the new evidence that was presented properly with the motion. Of course, is there any rule that the BIA has to, it's one thing to say that the immigration judge didn't fully consider all the evidence that was before him, but you can see that evidence is not before him, right? Um, there are, I guess, two categories of evidence here, Your Honor. There's the, the evidence I would say was submitted with the motion to remand, yes, and then the evidence that we were discussing with the motion, the possible reconsideration issue, which was before the immigration judge and the immigration judge also failed to, to consider that evidence. Um, and in this case, I would say that when it comes to the board, the, the question is really whether there was, the board wrote, um, a decision where it, you know, discusses the substantial evidence that is at issue and while they're not required to discuss every tiny detail or write a lengthy exegesis, there is a requirement that there is, um, consideration of the substantial evidence. Moving back to the evidence that was presented with the motion to remand, Your Honors, um, we would submit that this is, uh, sufficient and significant evidence that is particularized to Mr. Kumar's claims. Now, what I mean by that, it is not generalized country conditions evidence. It is not, um, evidence of facts that affect other individuals. These are threats to his life on other people that were made to be passed on to other people and that is sort of a unique situation which makes remand here in a very appropriate remedy, um, for this, this court to, to follow. I see I am out of time, Your Honors. You've reserved time for rebuttal. Thank you. Mr. Bikini? Yes, Your Honor. Mr. Bikini. Walter Bikini for the government. Thank you, Your Honor. Respondent. Um, Your Honors, I'd like to begin by addressing the 28-J letter that Petitioner filed. Um, this is a, the kind of argument that she's, that Petitioner is trying to raise now, that attacks that happened after the Petitioner has left India, that it should go to past persecution, is a very novel way of looking at past persecution. We're not saying that this is, uh, irrelevant evidence. It would be relevant to a claim of, for a well-founded fear of persecution. Um, but in that respect, the agency resolved that issue on relocation. But as it applies to past persecution, um, it has never been understood that events that happen outside the United States in the country in question after when the Petitioner is here in the United States should go towards a claim of past persecution. Even if we were to go into the case law, the, uh, Lopez Rodriguez, I'm sorry, the Morales Lopez case that Petitioner cited in the 28-J letter, which builds on the previous case, Tamara Gomez, those cases are distinguishable because in those, in those cases, the Petitioner were in their country when the systematic attacks on their families occurred. So even if we were to get to those cases, this is not like that. So it is the government's position that the Petitioner has not raised this before the agency. And frankly, a fair reading of their opening brief shows that they fully understood that whatever happened to Petitioner's family while he was here in the United States went to a well-founded fear of claim. And, uh, so we, we again, we emphasize, we emphasize that this has not been exhausted and it's a very novel approach for past persecution, uh, argument for it. Um, turning, turning to the, uh, to the merits of the Petitioner's case, those are for the immigration judge. Of course, a claim of past persecution requires extreme conduct. Uh, this case is, uh, this case law from the circuit, uh, emphasizes, and specifically the Hatani case, emphasizes that even someone who has been subjected to a brutal attack is not necessarily going to be found to be subjected to persecution. What, what's required is systematic targeting. And what happened to Petitioner here by his own testimony is not that. He was, um, there was an incident in July 2018. There was an incident in October 2018. Nothing happened in between. The first instance he said he had minor injuries. The second instance he said, uh, something, uh, he had redness and swelling and went to the hospital to relax and did not say that he had any serious injury. So the, the immigration judge's finding, which was affirmed on appeal to the Board, uh, withstands scrutiny under the substantial evidence standard review in this case. I hate to tell me if this is a red herring, but the course of events here sounds a great deal like the, uh, what we have heard from members of the Mann Party who have come to the U.S. and apparently there are dozens of similar claims that involve two incidents and then, you know, no report to the police or the police wouldn't do anything and then my father or my uncle or whoever it was arranged my, you're nodding your head, so I guess you're sort of agreeing with that. Yes, Your Honor. I mean, I think it's kind of, it, it became quite, uh, clear, uh, as I went through the case how similar this fact pattern seems to occur. Um, you know, there is no allegation of fraud. Fraud is not an issue in this case. No, I, I was just asking. Yeah. I don't mean to. No, no, I, I, I understand, but I, I, it, it is something that's out there and, uh. We need to know, but yeah, since in the position that we sit in, we need to know when there are commonalities, shall we say. And, and there is, uh, you know, DHS has confirmed that there is an ongoing investigation on these kinds of cases, uh, not just because this one's alone, but this is something that will play out over the months, if not years ahead. But this case can be resolved on the merits. Um, uh, as I said, the immigration judge's past prosecution finding is sound. Um, as with respect to the motion to remand, where he did put in more documents that sought to escalate his injuries more, uh, again, I think under Hetani, it's still not material because Hetani, again, requires that systematic targeting. And in the end, uh, even if, if a petitioner was slightly more injured or has long-term effects from his injury, it doesn't show that where there's a systematic targeting. He only testified to two events. And the events that happened after he left India would have to go to a claim for well-founded fear for persecution, which the agency did address by resolving it on relocation because one can't establish a well-founded fear of persecution if one is able to, if one can't show that they can't reasonably relocate. And the petitioner was not able to do that. He provided nothing other than say that there is some sort of national ID system in India that would, uh, the government would be able to find him throughout India in a country of over a billion people. But the immigration judge's point is that, well, you haven't shown that there's the people who are after you have the means to use the system and go after you throughout India. So the well-founded fear aspect of it is resolved on, on, on that point on relocation. Um, as with respect to, I mean, I'll just touch on a due process claim. Um, the petitioners, uh, argues that he, the immigration judge had a duty to inform him he could submit a personal declaration and, uh, medical reports. Of course, the agency said, well, you can't establish prejudice because you did exactly that, which in fact he did. But the petitioner now has shifted the argument somewhat to say that the immigration judge also had a duty to develop the record further. But that's not really what was raised before the agency. The only thing they raised before the agency with respect to the documentation was that the immigration judge had a duty to tell him he could submit these. Uh, so in that sense, it's an, an exhaustive claim. But even if it's a continuation of the same argument, the government's response is what we wrote in our brief, simply that there is, there was all, he had all of his process that was due to him. The immigration judge went out of her way to explain, to explain his rights, the asylum application. When he submitted his asylum application, he submitted many documents, uh, along with it. The immigration judge before the hearing confirmed that the, the contents that were there were true and correct. Then she, um, direct, had direct examination of the petitioner, which very thorough, allowed him to speak, allowed him to elaborate. At the end of it, she asked him, is there anything more? He said no. DHS then cross-examined him. So he was, did, what due process requires as it was run for this case is a meaningful opportunity to present evidence, and he certainly had that. Um, and, uh, just to touch on the, on the continuance, uh, the, the, the immigration judge denied the motion to continue because the petitioner was attempting to submit a, a video of the brother, uh, supposedly that he, I'm sorry, a video that supposedly showed that he was still being targeted in India, and then a documentation for the brother. The immigration judge said, I don't think this is relevant to your case, and the board affirmed on that point, and indeed it's not relevant to his case, because these two documents would not have gone towards the two main issues that the agency determined, past persecution, these documents don't relate to him at all as to a past persecution, and, uh, and relocation. Again, the, the fact that his brother might have had an incident, and the fact that he's still being sought in India at his locality, uh, still doesn't show that he was unable to show he could relocate within India. So the, the motion to continuance, uh, denial was sound, and the immigration judge did not abuse its discretion. And, um, and finally, as to, uh, as to the torture convention claim, you know, I think the immigration judge, and throughout her decision, she came back, she always came back to the point that there is no evidence here to show that the government of India is sanctioning what's happening to you or your fellow party members. Uh, she re, she, she, and, and as, particularly as to Kat, um, I think that, you know, the fact that there was one incident where the petitioner went to the police, and, uh, and the police wouldn't take his report, um, it, it doesn't show that there, that the government of India would acquiesce to torture, which requires that the government individual is aware that the instance of torture will occur, and then breaches their duty to, uh, to prevent that. And there's just not enough in his testimony to show that the government of India would, would do that, would acquiesce to a torture of him or similar party members. So, Your Honor, I think that when framed, uh, when, when properly framed and considered, and the evidence is considered, uh, the, the immigration judges and the board's findings withstand scrutiny under this court's standard of review. And, uh, with that, Your Honor, I ask that you deny the petition for review. If there are no further questions. Okay. I guess we have no questions. Thank you. Thank you, Your Honor. No further questions. Ms. Madding. Hello again, Your Honors. Thank you, Your Honors. Uh, during my rebuttal time, I'd like to address three points. Um, first, I'd like to stress, uh, two points, which you, you heard my opposing counsel, uh, discuss just, just now. Um, and the first one is that, that 28-J letter. And in this, uh, discussion, um, my opposing counsel noted the case Ghatani. And that is a case from this court's docket, which, uh, essentially explained that sustained systematic efforts need to be shown to demonstrate persecution. And now sustained and systematic efforts are exactly what's been shown here. And we would say that's, uh, been demonstrated both throughout, um, the evidence that was before the immigration judge of the multiple attacks and threats, uh, and then as well as the evidence presented on remand of the, uh, continued attacks and threats on Mr., uh, Kumar's family. Um, now I would also demonstrate that, uh, state that this evidence that we've presented with the motion to remand goes both to past and future, well, past persecution and my client's well-founded fear of future persecution. Um, now you did hear the government, uh, acknowledge that this evidence does direct, is directly relevant to a claim of well-founded fear of future persecution. Um, we just simply also submit as, as was stated in the Morales-Lopez case that this case does go to past persecution as well. And I understand the, um, the argument from, uh, from my opposing counsel to be that the evidence is not, um, this case is, is different as these attacks occurred after my client had left, um, India, whereas in Morales-Lopez, the attacks on family. Frankly, I've never heard a case where that, that's, uh, alleged ongoing series of events, uh, occurring after the person left the country was germane to past persecution. I've never heard that case. He says, and I'm sorry, I should have been more up on this, Morales-Lopez was while the fellow was still in the country. Yes, Your Honor. And, and that is, that is correct. These attacks on the family members did occur while Morales-Lopez was in the country. I mean, that would essentially, you know, destroy the difference between past persecution and well-founded fear, wouldn't it? I, I don't believe so, Your Honor, in this particular case. And the reason is because these attacks, these threats that were made to petitioner's family members were not threats on petitioner's family members' lives. They were threats on the petitioner's life. I understand that, but normally he'd introduce that if he, if he had already, if that was part of the inquiry of past persecution, well, now I'm gone, but they're still threatening me through the family members. That's past persecution. Well, why do you have a fear, well-founded fear of future persecution, sir? Oh, because they're still threatening my family members. Well, I would say the evidence here ... So it's, so in other words, you're trying to double count your evidence. I don't, I, I don't believe so. I think the difference is that it demonstrates here the, as was cited previously to Getani, the sustained systematic effort to persecute my client. And that is, goes from the attacks that he experienced himself ... Well, if that were so, the statute would have said persecution. It wouldn't have distinguished between past persecution and well-founded fear of future persecution. It would have just said asylees are based on persecution and left it to the creative, you know, representation or whatever to talk about the entire course of events, past, present, future, and so on. I understand that, Your Honor. What, what the difference is here is sort of the standards that this Court has laid for, laid forth, and that is the, the analysis of evidence on a cumulative basis, and that's in Venturi, Nevi, and McCossie, as well as this, the need to show a sustained systematic effort, and that's what has been done here. I would submit, Your Honors, however, that even if this Court finds that, you know, this evidence on, on cumulative past persecution, my client has already demonstrated, with the direct evidence before the immigration judge, that he did suffer past persecution. And one thing you do not hear from my, my co-counsel, or opposing counsel, is that my client didn't just suffer two attacks. He also suffered repeated threats. Both of those attacks involved threats to his life. And this is similar to cases that this Court has found past persecution in before. I would direct a matter of O. Z. and I. Z. in Tamara Gomez. In fact, in Tamara Gomez, this Court found that past persecution had occurred when the petitioner actually suffered no physical harm to his person himself. Instead, it was just a series of threats to the petitioner. And still, this Court found past persecution occurred. Here, we have threats in addition to the actual attacks. I see, I am out of time, Your Honor. Let me, let me just point out, my questions to Mr. Bocchini were not idle about the similarity of the facts in this case to the similarity of the facts in a number of other cases, some of, some of which, several of which have come to our Court, about the alleged persecution of members of the Mann Party in India. And in each case, there is a startling correspondence in the facts alleged. Each case will be two beatings. I had associated myself with an opposition party. The second time they beat me in a field and a farmer came and helped me, I went to the hospital. I either could or could . . . either I tried to contact the local police and they said, we're not getting our hands dirty or else . . . I didn't call the police because I knew they wouldn't help. And then my father or my uncle or whatever it was, immediately secured my passage to the U.S. I'm just notifying you as an officer of the Court that there are some very creative people out there and so maybe the law firm will look into representations in certain cases for pro bono. I appreciate that, Your Honor. I would say I have absolutely no reason to not believe my client here. He has suffered immensely at the hands of the BJP. He is also a party, a member of a different party here. He's not part of the Mann Party. He is from a party, a state in India many, many hundreds of miles away. I'll admit my geography is not great here, from where I believe the Mann Party is normally based. I'm not questioning . . . we're not in a position to question any of the integrity of the documentation here, other than through the lens of the BIA and so on. I'm just suggesting in the future. Understood, Your Honor. Okay. Thank you.